UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------- X

UNITED STATES OF AMERICA,                      :
                                               :
              -against-                         :
                                               :        **OPINION & ORDER**
LUIS M. BATISTA,                               :        06-cr-265 (S-5) (DLI)
                                               :
                          Defendant.            :
----------------------------------------------------- X

**DORA L. IRIZARRY, United States District Judge:**

On October 26, 2009, defendant Luis Batista was convicted by a jury of charges of conspiracy to distribute narcotics, conspiracy to commit bank fraud, bank fraud, conspiracy to obstruct justice and obstruction of justice. On November 30, 2009, Batista timely moved for a judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure, or, in the alternative, for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure. Batista challenges the jury's verdict with respect to the narcotics conspiracy, obstruction of justice conspiracy, and obstruction of justice charges. For the reasons set forth below, Batista's Rule 29 motion is granted as to the conspiracy to obstruct justice charge and otherwise denied. His Rule 33 motion is denied in its entirety.

**I.      BACKGROUND**

This Opinion and Order assumes familiarity with the background and procedural history of this case.[1] In summary, Luis Batista, a former New York Police Department ("NYPD") detective, was charged in Count One with conspiracy to distribute, and to possess with intent to distribute, cocaine, cocaine base ("crack"), and MDMA ("ecstasy"). The government presented

---

[1] For more details about the facts and circumstances of this case, please see the court's Memorandum & Order denying Batista's motion to suppress evidence. *United States v. Batista*, 2009 WL 910357 (E.D.N.Y. Mar. 31, 2009).

evidence at trial that Batista provided confidential law enforcement information to Virgilio Hiciano, who engaged in drug trafficking and related acts of violence in Brooklyn, New York, between January 1998 and July 2007. The government also introduced evidence that Batista witnessed Hiciano and a confidential informant give cocaine to a woman on numerous occasions, and that he distributed a small quantity of ecstasy to a woman in Hiciano's presence. Counts Seven and Eight charged Batista with conspiracy to obstruct justice and obstruction of justice for knowingly and intentionally obstructing, influencing, or impeding an Eastern District of New York grand jury investigation and trial.[2] Batista challenges the jury's October 26, 2009 guilty verdict with respect to these charges.

## II.    RULE 29 MOTION FOR A JUDGMENT OF ACQUITTAL

On a defendant's motion after the verdict, the court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." FED. R. CRIM. P. 29(a). Batista argues that the evidence presented against him at trial was insufficient to convict him of the narcotics conspiracy and obstruction of justice charges. The government counters that there was sufficient evidence presented to merit a guilty verdict on these counts.

### A.    Legal Standards

Rule 29 "imposes a heavy burden on the defendant, whose conviction must be affirmed 'if *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt[.]'" *United States v. Cote*, 544 F.3d 88, 98 (2d Cir. 2008) (citation omitted). A court's conclusion that "no rational trier of fact could have found the defendant guilty beyond a

---

[2] Batista was also charged with conspiracy to commit bank fraud and bank fraud for allegedly providing the Municipal Credit Union with fraudulent proof of termite inspection and treatment to secure a mortgage. As defendant does not challenge the jury's guilty finding with respect to these charges, they are not addressed herein.

reasonable doubt" must be based on its consideration of "all of the evidence, direct and circumstantial[.]" *United States v. Eppolito*, 543 F.3d 25, 45 (2d Cir. 2008) (citation omitted).

On a post-verdict motion for a judgment of acquittal, a trial court may not "substitute its own determination of the weight of the evidence and the reasonable inferences to be drawn for that of the jury." *Cote*, 544 F.3d at 99 (internal quotation and typographical marks omitted). Instead, "[t]he court must give full play to the right of the jury to determine credibility, and must draw all possible inferences in favor of the government." *Id.* In other words, the court must "[v]iew[] the evidence in the light most favorable to the government," which means "crediting every inference that the jury may have drawn in favor of the government, and recognizing that the government's evidence need not exclude every other possible hypothesis." *Eppolito*, 543 F.3d at 45 (internal quotation marks and citations omitted). However, "specious inferences are not indulged, because it would not satisfy the Constitution to have a jury determine that the defendant is *probably* guilty." *United States v. Lorenzo*, 534 F.3d 153, 159 (2d Cir. 2008) (internal quotation marks and citations omitted). Deference to a jury's verdict "is especially important when reviewing a conviction for conspiracy because a conspiracy by its very nature is a secretive operation, and it is a rare case where all aspects of a conspiracy can be laid bare in court with the precision of a surgeon's scalpel." *Eppolito*, 543 F.3d at 46 (internal quotation marks and citation omitted).

**B.      Narcotics Conspiracy**

To satisfy its burden of proof on the narcotics conspiracy charge, the government had to prove beyond a reasonable doubt that:  (1) two or more persons entered into the charged narcotics conspiracy; and (2) Batista knowingly and intentionally became a member of the conspiracy.  *See United States v. Santos*, 449 F.3d 93, 97 (2d Cir. 2006).  "To sustain a

conspiracy conviction, the government must present some evidence from which it can reasonably be inferred that the person charged with conspiracy knew of the existence of the scheme alleged in the indictment and knowingly joined and participated in it." *United States v. Rodriguez*, 392 F.3d 539, 545 (2d Cir. 2004) (internal quotation marks and citations omitted). "Proof that defendant knew that *some* crime would be committed is not enough." *Id.*

Batista contends that the evidence was insufficient as a matter of law to establish that he knowingly and intentionally became a member and participated in the charged conspiracy, as required to satisfy the second element of a conspiracy charge. The government responds that it presented sufficient evidence regarding at least eight ways in which Batista knowingly and intentionally associated himself with the narcotics conspiracy, any of which alone would have been enough for a guilty verdict. The government presented evidence at trial that Batista: (1) warned Hiciano about impending police actions and raids; (2) checked Hiciano's driver's license; (3) ran a computer check of 1127 Decatur Street in Brooklyn, the address for a house in which Hiciano stored large quantities of cocaine; (4) delivered a car to enable the delivery of narcotics; (5) enhanced Hiciano's status as a drug dealer; (6) distributed ecstasy; (7) checked whether Hiciano had any outstanding warrants; and (8) checked the false identity documents of Hiciano's drug supplier. The court agrees with the government that this evidence is more than sufficient to sustain a guilty verdict on the narcotics conspiracy charge.

### (1)     Police Actions and Raids

At trial, Hiciano testified that Batista would warn him by telephone, using code, of police activity in and around 441 Wilson Avenue in Brooklyn ("441 Wilson"), the main location from which the narcotics conspiracy operated. (Trial Transcript ("Tr.") 9/24 at 494-96.) Hiciano testified that he would call Batista while Batista was in the precinct. (*Id.* at 487, 494.) When

there was impending police activity at 411 Wilson, Batista would tell Hiciano that he was working, and would advise Hiciano to "be careful." (*Id*.) Hiciano would then call his workers and warn them to be cautious about their drug-related activities, because the street was "hot," that is, subject to surveillance or other law enforcement activity. (*Id*. at 487, 494, 522-23.) When Batista had no police activity to report, he would tell Hiciano that "everything was fine." (*Id*. at 522-23.) According to Hiciano, on several occasions, he thanked Batista for his assistance, to which Batista responded "[t]hat we were friends and that's what we were friends for." (*Id*. at 496.)

The defense contends that Hiciano's lack of specificity as to dates or years for Batista's participation in the charged conspiracy precludes a finding, beyond a reasonable doubt, that Batista knowingly and intentionally took part in the charged narcotics offenses. According to the defense, Hiciano's testimony that Batista warned him of police activity is fatally contradicted by evidence showing that the dates for the only search warrants executed at 441 Wilson, on May 28, 2004, May 4, 2005, April 10, 2005, and November 3, 2005, did not coincide with any telephone calls between Batista and Hiciano. For this proposition, Batista relies in part upon defense witness NYPD Detective Christopher Rodrigo, who testified that, other than these specific warrants, there were no other warrants executed at 441 Wilson. The defense further maintains, based on testimony from defense witness NYPD Captain Timothy Trainor, that Hiciano's testimony is undermined by the absence of evidence that Batista ever had access to any of the information allegedly relayed to Hiciano. Finally, while the defendant concedes that "if one were to consider Hiciano's testimony alone, in a vacuum, it might support a finding of guilt," he argues that the jury's verdict is unreasonable in light all of the evidence because Hiciano was not a credible witness. His contention is based in part on the fact that Hiciano denied receiving

information of police activity from Batista during two early meetings with the government following his arrest. All these arguments fail as contrary to law and the evidence adduced at trial.

To prevail, the government need not prove that the defendant was fully informed as to all of the details, time frame, or the scope of the conspiracy. *See, e.g.*, *Eppolito*, 543 F.3d at 47-49. Moreover, the government need not corroborate every aspect of Hiciano's testimony to sustain its burden of proof against Batista, as the testimony of an accomplice may be enough, by itself, for conviction if the jury finds that the testimony establishes guilt beyond a reasonable doubt. *See United States v. Florez,* 447 F.3d 145, 155 (2d Cir. 2006) ("The law is well established that a federal conviction may be supported by the uncorroborated testimony of even a single accomplice witness if that testimony is not incredible on its face and is capable of establishing guilt beyond a reasonable doubt.") (internal quotation marks and citation omitted). Thus, the purported ambiguities identified by Batista are insufficient to warrant reversal of his conviction.

The purported contradictions in statements made by Hiciano in his early meetings with the government and his testimony at trial likewise do not render the jury's verdict unreasonable as a matter of law. The court must "defer to a jury's assessments with respect to credibility, conflicting testimony, and the jury's choice of the competing inferences that can be drawn from the evidence[.]" *Lorenzo*, 534 F.3d at 159.

Furthermore, under the circumstances of this case, the court finds it inappropriate to adopt Batista's proposed interpretation of the evidence regarding the four search warrants executed at 441 Wilson. *See Eppolito*, 543 F.3d at 45 (the court must credit "every inference that the jury may have drawn in favor of the government") (internal quotation marks and citation omitted). Detective Rodrigo was asked only about search warrants executed from December 2004, whereas, according to Batista, Hiciano and Batista met in 1996. (Tr. 10/13 at 2160, 2259;

*see also* Tr. 9/22 at 412.) Detective Rodrigo was not asked about search warrants preceding December 2004, nor about other types of police actions at 441 Wilson. Accordingly, the court concurs with the government that Detective Rodrigo's testimony misses the great majority of police actions undertaken during the time that Hiciano knew Batista.

The government also presented other evidence at trial that supports the inference that there were significantly more than four relevant police actions at 441 Wilson, including evidence that the police made 249 arrests there from May 14, 2002 to June 20, 2008. (Gov't Trial Ex. ("GX") 326.) Defendant's arguments notwithstanding, the government was under no obligation to limit its presentation of evidence to Batista's disclosure of search warrants, as opposed to tips regarding police activity in general. Furthermore, as the government notes in its opposition, Hiciano's testimony that Batista warned him of police activity was corroborated by Eileen Pena, one of Hiciano's former girlfriends, and three of Hiciano's accomplices in the charged drug conspiracy, namely, his drug supplier, Alexander Alcantara ("Moreno"), and two of Hiciano's workers at 441 Wilson, Thomas Flores ("Max"), and Jonathan Kollock.

Pena testified that, in 2001 or 2002, when she expressed her concerns regarding his friendship with Batista, Hiciano responded that he trusted Batista because Batista would let him know when he was going to get raided. (Tr. 10/13 at 2117-18.) Alcantara testified that he witnessed Hiciano give instructions to close 411 Wilson after receiving a telephonic warning about forthcoming police action from Batista. (Tr. 10/5 at 1515-16.) Similarly, Flores testified that the police came to 441 Wilson on numerous occasions and that Hiciano called him or a fellow drug dealer approximately twenty to forty times a month to warn about the drug spot being "hot." (Tr. 9/29 at 835-36.) Finally, the government presented evidence that Hiciano had advance notice of the police raids executed on November 3, 2005 and May 4, 2005, pursuant to

testimony from Flores and Kollock that they were arrested during these raids after failing to heed warnings from Hiciano. (*See* Tr. 9/29 at 837-39; 10/19 at 2896-900.) Defendant argues that Flores and Kollock could have received advance notice of the police activity in issue "based on how the operation was set up, with lookouts and Hiciano stationed in the barbershop down the block," and not as a result of Hiciano's access to "inside information." The court cannot adopt the inferences urged by the defense, but must rather "draw all possible inferences in favor of the government" from the evidence actually adduced. *Cote*, 544 F.3d at 99; *see also United States v. Guzman*, 7 F. App'x 45, 54-55 (2d Cir. 2001) (affirming conviction for conspiracy to murder because, *inter alia*, there was sufficient corroboration of the testimony of a cooperating witness whose credibility was attacked by the defense, and testimony was not incredible on its face).

Other evidence tends to show that Hiciano and Batista may have had telephone conversations not reflected in the two sets of phone records for Hiciano and Batista introduced as trial exhibits. (GX 317-318.) Hiciano testified that he used several mobile phones in addition to the one for which records were admitted (Tr. 9/22 at 407), and Batista acknowledged calling Hiciano on at least one additional unspecified number. (Tr. 10/14 at 2447-48.)

Finally, the court concurs with the government that there was sufficient evidence presented at trial for a rational jury to have drawn the inference that Batista had access to information about police actions in and around 441 Wilson. For instance, Captain Trainor testified that a search warrant log (GX 705) was maintained for several years in an unlocked cabinet on the same floor as Batista's detective squad in the 90th precinct, and no record was kept of the individuals who examined the book. (Tr. 10/19 at 2704, 2716-19, 2734.) NYPD Lieutenant Robert Rios also testified that a number of individuals received notifications prior to the execution of search warrants by narcotics officers. (Tr. 10/6 at 1594-98.) The jury could

have reasonably concluded that Batista had access to advance information about police action at 441 Wilson. In sum, the court will not tread upon the province of the jury and substitute the jury's determination of the weight of the evidence presented and the reasonable inferences that may be drawn from that evidence for those proposed by the defendant. *See United States v. Jackson*, 335 F.3d 170, 180 (2d Cir. 2003) ("[I]t is the task of the jury, not the court, to choose among competing inferences that can be drawn from the evidence."); *see also Florez*, 447 F.3d at 154-55.

### (2) Driver's License Checks

Hiciano testified that Batista assisted him by searching for his driver's license in a police computer database, to confirm that Hiciano had no outstanding warrants, tickets, or fines. (Tr. 9/24 at 487-88.) On one occasion, Batista advised Hiciano to pay a pending summons so that his license would not be suspended. (*Id.* at 488-89.) Batista's objections to the lack of specificity as to dates and absence of corroboration fail for similar reasons as his challenge to the sufficiency of the evidence concerning the police activity and raids, *supra*. The testimony of an accomplice may be enough, by itself, for conviction, if the jury finds that the testimony establishes guilt beyond a reasonable doubt. *See Florez,* 447 F.3d at 155. The jury may have reasonably credited Hiciano's testimony that Batista checked Hiciano's driver's license and reported the findings to Hiciano. *See Lorenzo*, 534 F.3d at 159 (finding that the court must "defer to a jury's assessments with respect to credibility, conflicting testimony, and the jury's choice of the competing inferences that can be drawn from the evidence"). The government's failure to identify or submit corroborating DMV records at trial does not render Hiciano's testimony incredible on its face or warrant a judgment of acquittal, especially in light of other evidence adduced at trial concerning Batista's participation in the conspiracy. *See Guzman*, 7 F. App'x at 54-55.

### (3)    1127 Decatur Street

Batista challenges the sufficiency of a computer check on 1127 Decatur Street, Brooklyn, New York, conducted by him on or about September 29, 2005, as evidence of his participation in the charged narcotics conspiracy. Hiciano indicated that he hid his drugs and cooked crack at an ex-girlfriend's apartment at 1127 Decatur Street. (Tr. 9/22 at 391-95; Tr. 9/24 at 496-97, 499; GXs 69-70.) After discovering that the apartment had been broken into, Hiciano testified that he called Batista to see whether the apartment had been raided by police officers. (Tr. 9/24 at 497-99.) Batista contends that the evidence established that he used his own password to run a warrant search in the NYPD's computer system for Originating Case Agency ("OCA") # W1975201304, which was related to a Family Court case with a 1975 docket number. Within four seconds, this OCA number generated the address 1127 Decatur Street without additional input from Batista.[3] Batista claims that he could not have been searching for 1127 Decatur Street on Hiciano's behalf, because it would have been impossible to run a new search for that address in the mere four seconds from the OCA number search, and that Hiciano's testimony to the contrary was therefore not credible.

The court disagrees with Batista's contentions. First, the fact that the address 1127 Decatur Street is written on the face of the 1975 Family Court warrant under OCA # W19752011304 does not contradict Hiciano, who did not and could not know precisely how Batista conducted his computer search. As the government notes, a rational jury could conclude that Batista's use of his own password explains why he initially searched a warrant rather than 1127 Decatur Street—he was attempting to cover his tracks. Indeed, the evidence at trial

---

[3] The jury could have reasonably credited testimony from Sgt. George Tom as to certain NYPD computer databases that the reference to "1127 Decatur Street" in GX 332 was not the result of a search, but rather the actual query term. (*See* GX 332; Tr. 10/8 at 1984.)

supports the inference that Batista obtained the 1975 warrant number elsewhere and used it to cover up his search for 1127 Decatur Street.[4] The jury reasonably could have discredited Batista's initial explanation as to why he was running such warrant, that his search related to a robbery investigation of Louis Hyman, in light of the government's introduction of that robbery file, which contained no reference to the 1975 warrant, to Melvin James, or to 1127 Decatur Street. (Tr. 10/15 at 2606-07; GX 701.) "[I]t is the task of the jury, not the court, to choose among competing inferences that can be drawn from the evidence." *See Jackson*, 335 F.3d at 180.

Batista's other claims are also readily belied by the record. The claim that Hiciano never specified the address on Decatur Street where he allegedly stored drugs is contradicted by Hiciano's unequivocal identification of the relevant location on Decatur Street in photographs, and by Special Agent Christopher Kelly's uncontroverted testimony confirming the address of that location as 1127 Decatur Street. (Tr. 9/22 at 392-95; Tr. 9/24 at 496-97; Tr. 10/6 at 1752; GXs 69 & 70.) Contrary to the defense's argument that there is no evidence that Hiciano resided at or used this address, Hiciano testified that ex-girlfriend and narcotics business partner Deyanira Sanchez resided at 1127 Decatur Street and that he cooked crack and stored drugs there. (Tr. 9/22 at 391-95; Tr. 9/24 at 496-97, 499.) Hiciano further testified that Batista knew what Hiciano used this apartment for, and that Batista would frequently pick him up at 1127 Decatur

---

[4] (*See* Tr. 10/21 at 3151.) For this proposition, the court is persuaded by the government's argument that the jury heard considerable evidence that Batista's *modus operandi* was to use irrelevant case numbers or the subterfuge of a warrant to disguise illegitimate searches concerning Hiciano. (*See* Gov't Opp. to Batista's Mot. at 12 (citing GX 204 (Batista twice ran Hiciano referencing NYPD Case File No. 1297); GX 316 (Case File No. 1297, for Harry Macias homicide, containing no reference to Hiciano); Tr. 10/1 at 1123-24 (Sgt. Robert Kelly's testimony that Hiciano had no relation to Case File No. 1297); GX 332 (showing Batista searched warrant number V1995200755, corresponding to a 1995 Hiciano arrest warrant, a few seconds before querying the name "Virgilio Hiciano").)

Street before their nights out on the town. (Tr. 9/24 at 497-98.) Indeed, Hiciano testified that after a night of drinking and chasing women at a club, Batista stayed with him overnight at 1127 Decatur Street. (Tr. 9/24 at 484-85.) When Batista awoke the next morning, he found a small bag of the kind used by Hiciano to package cocaine. (Tr. 9/24 at 484.) Batista warned Hiciano, "you need to be more careful when [you] did that," which Hiciano understood to mean packing crack in the house. (Tr. 9/24 at 484.) The defense's objection that, other than Hiciano, "[n]one of the other witnesses testified regarding this address," is unavailing, as the testimony of an accomplice may be enough, by itself, for conviction. *See Florez,* 447 F.3d at 155.

Significantly, Batista admitted during cross-examination that, consistent with computer and telephone records, immediately before making his query for 1127 Decatur Street, he began an eleven minute call on his mobile telephone with Hiciano that continued as Batista ran the search. (Tr. 10/14 at 2366-67; GX 317; GX 332). In other words, Batista conceded that he was on the phone with Hiciano as he ran the search in issue. (Tr. 10/14 at 2367.) For these reasons, the court finds that the jury reasonably could have determined that Batista's review of computer records pertaining to 1127 Decatur Street established Batista's participation in the narcotics conspiracy.

### (4) Other Evidence Presented at Trial

The government presented additional evidence that it contends could allow a reasonable jury to find that Batista knowingly and intentionally participated in the charged narcotics conspiracy. This includes evidence that Batista borrowed and returned Hiciano's car, knowing it would be used by Pablo Tejada, one of Hiciano's workers, to deliver drugs. (Tr. 9/22 at 438-40; Tr. 10/13 at 2291, 93.) Other evidence supported the inference that Batista knew that Hiciano was a drug dealer, and knowingly enhanced Hiciano's status by appearing with him in public

several times a week in bars attended by other drug dealers and allowing Hiciano to pay his bar bills. (Tr. 9/24 at 576-77; 9/29 at 845-49.) The defense claims that Batista could not knowingly and intentionally assist a drug operation by simply returning a car to its owner, and that his social activities with Hiciano are insufficient to establish knowing participation in the conspiracy with the intent of aiding its objectives. It is well-established that a Rule 29 motion does not afford a trial court with the opportunity to "substitute its own determination of the weight of the evidence and the reasonable inferences to be drawn for that of the jury." *Cote*, 544 F.3d at 99 (internal quotation marks and citation omitted). Moreover, even accepting Batista's arguments, this evidence was but a fraction of the many factors that a rational jury could consider in concluding that the evidence as a whole showed Batista's membership in the charged conspiracy. *See Eppolito*, 543 F.3d at 45.

Also presented was evidence that, in Hiciano's presence, Batista distributed ecstasy he obtained from Hiciano to a young woman named Haydee Ramos (Tr. 9/24 at 551-52), used the NYPD computer system to check whether Hiciano had outstanding warrants (*see, e.g.*, Tr. 9/24 at 492; Tr. 10/1 at 1119-25), and ensured that there were no issues with the fake identification documents obtained by a man named Nelson, who was one of Hiciano's suppliers. (Tr. 9/24 at 493-94) Batista argues that the object of Hiciano's drug conspiracy was never the distribution of ecstasy, and notes that no one except for Batista was ever charged with ecstasy distribution. Nevertheless, Hiciano's testimony established that one of his crack workers, "Rafi," had a supply of ecstasy, and that, at Hiciano's request, Rafi brought two pills to Hiciano at a club where Hiciano was socializing with Batista. (Tr. 9/24 at 549.) It was these two pills that Hiciano gave to the defendant. (Tr. 9/24 at 551.)

As to the searches for Hiciano's warrants, Batista contends that he ran Hiciano's name in an NYPD computer five times, as opposed to eight times as alleged by the government, and that only two of these searches preceded Hiciano's arrest by the FBI. Even if the court were to credit any of these arguments, they would not change its determination that the sum total of evidence presented at trial was sufficient to sustain Batista's conviction in charged narcotics conspiracy.

As the jury could have reasonably found that Batista knowingly participated in the charged narcotics conspiracy on the basis of this evidence, he is not entitled to a judgment of acquittal under Rule 29 on his narcotics conspiracy conviction.

### C.    Obstruction of Justice

Section 1512(c)(2) imposes criminal liability on one who "corruptly . . . obstructs, influences, or impedes any official proceeding, or attempts to do so." 18 U.S.C. § 1512(c)(2). The defense contends that no rational jury could have found that Batista's actions impeded the grand jury investigation because the Federal Bureau of Investigation ("FBI") intended Batista to find out about the investigation, and wanted Batista to talk about the investigation. It further contends that Batista never took any step that actually interfered with any ongoing investigation, and that the allegedly obstructive activity was limited to talks with Sgt. Kelly regarding the investigation.

The defense misconstrues the applicable law when it argues that Batista's statements could not have interfered with the government's investigation because such statements were deliberately elicited by the government as part of that investigation. Batista was not merely charged with actually influencing the investigation in issue—he was accused of attempting to derail that investigation. Count Eight charges that:

> In or about and between November 2005 and October 2007 . . . LUIS M.
> BATISTA . . . together with others, did knowingly, intentionally and corruptly

> obstruct, influence and impede, and attempt to obstruct, influence and impede . . .
> an Eastern District of New York ["EDNY"] grand jury investigation and trial.

Section 1512(c)(2), under which Batista was convicted, plainly inculpates a person for attempting to obstruct or impede an official proceeding. *See* 18 U.S.C. § 1512(c)(2) (imposing criminal liability for one who corruptly "obstructs, influences, or impedes any official proceeding, or *attempts to do so*") (emphasis added). "[T]he plain language of the statute . . . encompasses all actions that 'corruptly influence' a proceeding—or even attempt to do so—not merely those that affect its ultimate outcome." *United States v. Reich*, 479 F.3d 179, 186-87 (2d Cir. 2007).

The key inquiry, therefore, is not whether Batista's actions actually affected the outcome of the official proceedings, but rather whether his actions demonstrate his intent to do something that had the natural and probable effect of obstructing justice. *United States v. Bruno*, 383 F.3d 65, 87 (2004) (finding that "the conduct offered as proof of the intent to obstruct a federal proceeding must, '*in the defendant's mind* have had the natural and probable effect of obstructing'") (emphasis added) (citation omitted); *see also United States v. Muhammad*, 120 F.3d 688, 695 (7th Cir. 1997) (in a case involving an obstruction charge under 18 U.S.C. § 1503, finding that the Supreme Court's ruling in *United States v. Aguilar*, 515 U.S. 593, 599 (1995) "did not state that a defendant's actions must have the natural and probable effect of obstructing justice," but rather holds that "defendant's actions must demonstrate his intent to do something that has the natural and probable effect of obstructing justice"); *Reich*, 479 F.3d at 185 (holding that *Aguilar's* analysis of 18 U.S.C. § 1503(a) applies to Section 1502(c)(2)).

The evidence at trial amply demonstrated that Batista intended to affect the outcome of the EDNY proceedings, and thus corruptly attempted to influence such proceedings. For instance, the evidence showed that, on March 17, 2007, Batista suggested to Sgt. Kelly that he

falsely tell investigators that he and Batista had conferred about Hiciano, knowing that Sgt. Kelly could be a witness in any criminal proceeding against him.  (GX 113 & T-113 at 20; Tr. 10/1 at 1127.)  Batista did this at a time when the evidence shows that he was extremely mindful of the criminal narcotics investigation.  On March 12, 2007, Batista told Sgt. Kelly that "to prove conspiracy, you have to know . . . One that I knew that he sold drugs, which I have an idea but I have no knowledge . . . then you have to show I knew when and where and to whom it was being done or have some personal knowledge with it[.]"  (GX 112 & T-112 at 9.)  The jury also heard Batista admit that he ran an unauthorized computer search to find Hiciano's arrest warrant to obtain more information about the investigation.  (GX 113 & T-113 at 9 ("I ran Triple I on him. I mean, what are they going to do?  They're gonna hit me with computer misuse.  I'll take that hit and laugh at them.")  This supports a reasonable inference that Batista was aware of the criminal investigation charged in the indictment and set out to obstruct that investigation.

At trial, the government also presented evidence in the form of consensually recorded conversations by co-conspirator Luis Calderon that Batista attempted to dissuade Calderon from cooperating with law enforcement.  (*See* GX T-102 at 4-5.)  Specifically, in November 2006, after Calderon stated that he was facing federal conspiracy charges and suspected Hiciano was cooperating, Batista reassured Calderon that Hiciano was in Santo Domingo and could not cooperate against Calderon from outside the country.[5]  (*Id.*)  In February 2007, Batista also warned Calderon that "everything gets found out," and stated "if you say I have nothing to discuss with them, you have nothing to discuss with them.  They can't force you to say . . . anything about me, or anybody.  Because about me there is nothing to say[.]"  (GX T-105 at 2, 5.) Batista also made false statements to Calderon that Batista strongly suspected would be recorded

_____

[5] Notably, Batista, a NYPD detective, knew that Hiciano was in the Dominican Republic as a fugitive from the authorities, and did nothing to convey this information to assist in his capture.

and reviewed by law enforcement officers. (*See* GX 106 & T-106 at 9-12; *see also* GX T-105 at 4-5). For instance, Batista stated that his relationship with Hiciano was limited to having infrequent drinks together at bars, where Batista concedes that the two in fact spent a substantial amount of time together. (GX T-105 at 4-5; Tr. 10/14 at 2324-25, 2474.) This evidence supports the inference espoused by the government, that Batista was attempting to influence or even intimidate Calderon, a potential witness against him. (*See* Tr. 10/21 at 3042.)[6]

Batista further claimed that Hiciano was his confidential informant, falsely stating that he provided other detectives, including Lawrence Eggers, George Fahrbach, and Michael O'Keefe, with Hiciano's contact information in order to solve homicides or otherwise assist his colleagues. (*See* GX 107 & T-107 at 8-9; Tr. 10/5 at 1470; Tr. 10/13 at 2287; Tr. 10/14 at 2420-21.) Batista also falsely stated that, during a CompStat meeting in 2006, he offered to help Lt. Robert Rios with a narcotics case involving Hiciano. (GX 112 & T-112 at 4; Tr. 10/6 at 1606-07.)

In sum, viewed in its totality and in the light most favorable to the government, and crediting every inference that the jury may have drawn in favor of the government, this evidence is sufficient to establish that Batista: (1) was aware that there was an official proceeding pending, about to be initiated, or reasonably foreseeable; (2) corruptly obstructed, influenced, or impeded the official proceeding, or attempted to do so; and (3) acted knowingly and intentionally. Since the evidence was sufficient for a rational trier of fact to have found the essential elements of obstruction of justice beyond a reasonable doubt, defendant's Rule 29 motion with respect to this charge is denied.

---

[6] The court agrees with the government that although Calderon told Batista about the ongoing federal narcotics investigation, this only served to put Batista on notice that his actions would interfere with a federal official proceeding. Calderon did not encourage Batista to lie to other potential witnesses, such as Kelly, about Hiciano. Thus, there is no evidence to support Batista's claim that the allegedly obstructive conduct was instigated by the government.

### D. Conspiracy to Obstruct Justice

Batista cites to the rule of consistency for his contention that his conviction for conspiracy to obstruct justice cannot stand in light of co-defendant Henry Conde's acquittal on the same charge. He argues that Conde's acquittal negates the possibility of an agreement between Batista and Conde, and thereby denies the existence of any conspiracy at all. The government responds that the charged conspiracy involved not only Henry Conde, but also William Valerio, who testified that he conspired with Batista to obstruct justice, giving the jury a reasonable basis for their guilty verdict. The government further responds that it is well-settled in this Circuit, pursuant to U.S. Supreme Court precedent, that the acquittal of an alleged co-conspirator does not mandate acquittal. Although the court finds that Batista's arguments are flawed as a matter of law, the government still failed to satisfy its burden of proof with respect to the conspiracy to obstruct justice charge. Thus, Batista's motion for a judgment of acquittal as to this charge is granted.

Batista's argument under the rule of consistency, which is based on *United States v. Espinosa-Cerpa*, 630 F.2d 328, 331 (5th Cir. 1980), is contrary to Second Circuit precedent. "Under the traditional 'rule of consistency,' a conviction of one conspirator cannot stand if all co-conspirators have been acquitted in the same proceeding." *United States v. Rodriguez,* 983 F.2d 455, 459 (2d Cir. 1992) (citation omitted). However, "[m]ost circuits have now departed from the rule of consistency in light of the Supreme Court's admonition in *United States v. Powell,* 469 U.S. 57, 64-65 (1984), that a jury acquittal cannot necessarily be equated with a finding that the Government failed to prove guilt beyond a reasonable doubt." *Rodriguez*, 983 F.2d at 459; *see, e.g.*, *United States v. Bucuvalas,* 909 F.2d 593, 595-96 (1st Cir. 1990); *United States v. Andrews*, 850 F.2d 1557, 1561-62 (11th Cir. 1988). Indeed, as noted in a subsequent

Fifth Circuit opinion, *Espinosa-Cerpa* itself "questioned the continued vitality of the traditional rule." *United States v. Albert*, 675 F.2d 712, 713 (5th Cir. 1982) (citing *Espinosa-Cerpa*, 630 F.2d at 331-33 & n.5); *see also Harris v. Rivera*, 454 U.S. 339, 345 (1981) ("Inconsistency in a verdict is not a sufficient reason for setting it aside. We have so held . . . with respect to verdicts that treat codefendants in a joint trial inconsistently.") (citations omitted).

*Powell* cautions that courts should be extremely reluctant to review inconsistent jury verdicts: "the Government's inability to invoke review, the general reluctance to inquire into the workings of the jury, and the possible exercise of lenity [] suggest that the best course to take is simply to insulate jury verdicts from review on this ground.'" *Powell*, 469 U.S. at 68-69.  In light of this admonition, the Second Circuit has held that a "[d]efendant's conspiracy conviction does not become infirm by reason of jury verdicts of not guilty against all of his alleged coconspirators." *United States v. Acosta*, 17 F.3d 538, 545 (2d Cir. 1994); *see also United States v. Ferby*, 108 F. App'x 676, 681 (2d Cir. Sept. 23, 2004) (where defendant argued "that the acquittal of his alleged coconspirators require[d] his acquittal for the [charged] conspiracies," finding that "[i]nconsistent verdicts are generally not reviewable," as "[t]hey may, for example, be the result of jury lenity, which does not have to be provided uniformly to all codefendants"). Instead, such "superficially inconsistent conspiracy determinations in the same proceedings" are permissible "at least so long as the indictment mentions 'others,'" where there is "evidence that the defendant 'conspired with others unknown.'" *Rodriguez*, 983 F.2d at 459 (internal citations omitted).

Here, the indictment alleges that Batista conspired not just with Conde, but also with

William Valerio[7] and others unknown:

> In or about and between November 2005 and October 2007, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants LUIS M. BATISTA, HENRY CONDE, and WILLIAM VALERIO, together with others, did knowingly, intentionally and corruptly conspire to obstruct, influence and impede, on or more official proceedings, to wit: an Eastern District of New York grand jury investigation and trial[.]

Valerio testified pursuant to a cooperation agreement with the government that he helped Batista commit bank fraud, was told by Batista about an ensuing investigation, and, when the FBI approached him pursuant to that investigation, he made false statements about his illegal activities with Batista. (Tr. 9/21 at 129-133, 196-97.) He also admitted that he conspired with Batista to obstruct justice but did not elaborate as to how he did so. (Tr. 9/21 at 147.) Valerio's admission does not absolve the government of its burden to prove each of the elements for each charge beyond a reasonable doubt with respect to Batista. *See United States v. Ramirez*, 973 F.2d 102, 105 (2d Cir. 1992) (finding that an admission of guilt by a codefendant as to a crime charged against the defendant on trial may not be considered by a jury as evidence of that defendant's guilt).

Valerio testified unequivocally that: (1) Batista never told him how to respond to any FBI inquiries; (2) when he lied to the FBI, it was not because he was asked by Batista to do so, but rather to "keep [himself] out of trouble;" (3) Batista never made any suggestions as to what to say to anyone investigating this matter; and (4) he was never contacted by anyone on Batista's behalf to suggest what to say to anyone regarding this matter. (Tr. 9/21 at 200-01.) With respect to evidence that Batista asked Valerio to check who made the initial report of misconduct on the NYPD's Internal Affairs Bureau network, Valerio testified that he never agreed to review the log

---

[7] William Valerio was not tried with Batista and Conde because he pled guilty to bank fraud. (GX 321.)

so as "to not compromise the integrity on an ongoing case." (*Id.* at 166-67.) Thus, there was no evidence that Valerio ever entered into any agreement with Batista to obstruct justice.

Significantly, other than Valerio and Conde, the government has not identified or proffered evidence about additional participants in the charged conspiracy to obstruct justice. Nor does a thorough review of the record support an inference that Batista conspired to obstruct with others apart from Conde, who was acquitted. *See Rodriguez*, 983 F.2d 455 (allowing inconsistent conspiracy determinations "at least so long as the indictment mentions 'others,'" where there is "evidence that the defendant 'conspired with others unknown'"). Accordingly, Batista's motion for a judgment of acquittal as to this charge is granted.

## III.    RULE 33 MOTION FOR A NEW TRIAL

"Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." FED. R. CRIM P. 33. Rule 33 "confers broad discretion upon a trial court to set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice." *United States v. Polouizzi*, 564 F.3d 142, 159 (2d Cir. 2009) (internal quotation marks and citation omitted). The court "must examine the entire case, take into account all facts and circumstances, and make an objective evaluation," and be satisfied that "competent, satisfactory and sufficient evidence in the record supports the jury verdict." *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001) (internal quotation marks and citation omitted). However, "[o]nce the jury rendered a verdict upon an error-free trial, only a compelling reason involving substantial unfairness could justify undoing the jury's verdict and ordering a new trial." *Polouizzi,* 564 F.3d at 162.

"The defendant bears the burden of proving that he is entitled to a new trial under Rule 33, and before ordering a new trial pursuant to Rule 33, a district court must find that there is a

real concern that an innocent person may have been convicted." *United States v. McCourty*, 562 F.3d 458, 475 (2d Cir. 2009) (internal quotation marks and citation omitted). Courts must "exercise Rule 33 authority sparingly and in the most extraordinary circumstances," such as where "a district court is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." *Cote*, 544 F.3d at 101 (internal quotation marks and citation omitted). Indeed, the "ultimate test" on a Rule 33 motion is "whether letting a guilty verdict stand would be a manifest injustice." *United States v. Canova*, 412 F.3d 331, 349 (2d Cir. 2005) (internal quotation marks and citation omitted).

Batista argues that he is entitled to a new trial on the narcotics conspiracy charge because the guilty verdict was based on Hiciano's patently incredible testimony regarding Batista's provision of information regarding police activity and raids at 441 Wilson and review of Hiciano's DMV records, *supra*. Batista also relies on the purported weaknesses in the evidence regarding his computer search for 1127 Decatur Street. Finally, Batista argues that a new trial is warranted on the obstruction of justice charge on grounds that his actions could not, as a matter of law, impede the grand jury proceeding because the FBI intended Batista to find out about the investigation and wanted him to discuss it with Sgt. Kelly and others. The court has already considered and rejected these arguments as a basis for Batista's Rule 29 application, and finds them similarly deficient as the basis for a Rule 33 motion.

Although the court rejects Batista's argument on the ground that Hiciano's testimony cannot be deemed "patently incredible," *see supra* Section IIB, it is further persuaded by the government's argument that there are many more grounds to disbelieve Batista's testimony than there are to disbelieve Hiciano's. *See Ferguson*, 246 F.2d at 133 (finding that in deciding a motion under Rule 33, the court may weigh the evidence and determine the credibility of

witnesses). (*See, e.g.*, Tr. 10/14 at 2340-46 (Batista admits to bank fraud); 2335-36 (Batista admits to making false claims that his confidential informant provided information about the attempted murder of another police officer); 2394-99, 2405-06 (Batista admits that he created a website in which he made false statements in support of his request for donations); 2416-22, 2428 (Batista admits that he provided false information to this court in a brief where he claimed to have advised Lt. Rios that Hiciano was his informant); Tr. 10/15 at 2560-61 (Batista admits that he stole $1,000 of merchandise from Home Depot by making false claims).) By contrast, the court found Hiciano's testimony quite credible as a whole.

Finally, the defense submits that Batista is entitled to a new trial on grounds that the government violated *Brady v. Maryland*, 373 U.S. 83 (1963) by failing to make a timely production of discovery regarding Batista's search of OCA #W1975201304. He argues that GX 702, a copy of a 1975 Family Court warrant (OCA #W1975201304) (the "1975 Warrant") and the underlying case file constitute exculpatory evidence that should have been provided to the defense prior to trial. As a threshold matter, even if the court erred by admitting GX 702 in light of the purportedly delayed production, the error was harmless in light of the overwhelming evidence of defendant's guilt as to the narcotics conspiracy, *supra* Section II.B. *See In re Terrorist Bombings of U.S. Embassies in East Africa*, 552 F.3d 93, (2d Cir. 2008) (noting that even where the prosecution has "breached its broad obligation to disclose exculpatory evidence, *there is never a real 'Brady violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict*") (internal quotation marks, citation, and typographical marks omitted).

Moreover, the court finds no irregularities in the timing of the government's disclosure of GX 702 and related case file, as they were provided to the defense immediately after they were

received and were obtained to rebut arguments raised by the defendant during the trial. (Gov't Opp. to Batista's Mot. at 23 & 24 n.3.) Nor does the court find that these materials were exculpatory in light of other evidence surrounding Batista computer search for this number, including phone records showing that Batista was on the phone with Hiciano while he made the relevant searches. Finally, although Batista claims that the 1975 warrant would have assisted his cross-examination of Hiciano or Sgt. Tom, he never sought to recall these witnesses after obtaining the warrant, as he could have done. Accordingly, the alleged delay in discovery disclosures does not warrant a new trial under Rule 33. *See Cote*, 544 F.3d at 101; *McCourty*, 562 F.3d at 475.

## CONCLUSION

For the reasons set forth above, Batista's Rule 29 motion is granted only to the extent that the jury's verdict of guilty on the charge of conspiracy to obstruct justice is vacated and a judgment of acquittal as to that count is hereby entered. The Rule 29 motion is denied in all other respects. Batista's Rule 33 motion is denied in its entirety.

SO ORDERED.

Dated: Brooklyn, New York
       March 24, 2010

_____/s/_____
                 DORA L. IRIZARRY
             United States District Judge