UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------x

UNITED STATES OF AMERICA       :

                            :

     -against-            :

                            :

LUIS M. BATISTA, *pro se,*     :

                            :

           Defendant.   :

-------------------------------------------------------x

|  |  |
|---|---|
| | **ORDER ON MOTION FOR REDUCTION OF SENTENCE UNDER 18 U.S.C. § 3582(c)(1)(A) (COMPASSIONATE RELEASE)** |
| | **Docket No.  06-cr-265(S-5) (DLI)** |
| | **USMS No.  75720-053** |

**Dora L. Irizarry, United States District Judge:**

     *Pro se* Defendant Luis M. Batista ("Defendant") moves for a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) and the First Step Act.  *See*, Def. Mot., Dkt. Entry No. 541. Specifically, Defendant seeks early release to home detention.  The Government and the U.S. Probation Department ("Probation") opposed the request.  *See*, Govt. Opp., Dkt. Entry No. 543; Prob. Status Report ("SR"), Dkt. Entry No. 546.   The Defendant replied and provided a supplemental declaration.  *See*, Def. Rep., Dkt. Entry No. 544; Def. Supp. Decl., Dkt. Entry No. 545.   The Defendant submitted additional letters from himself, family members, and other individuals in support of his motion.  *See*, Dkt. Entry Nos. 549-563.[1]  For the following reasons, Defendant's motion is denied in its entirety.

## BACKGROUND

     The Court assumes the parties' familiarity with the facts and procedural history of this case. On October 26, 2009, Defendant was found guilty after a jury trial of:  (1) conspiracy to distribute cocaine, cocaine base ("crack"), and MDMA ("ecstasy"); (2) conspiracy to commit bank fraud; (3) bank fraud; (4) conspiracy to obstruct justice; and (5) obstruction of justice.  *See*, Minute Entry

---

[1] Most of the letters provided in support of Defendant's motion are boilerplate letters that only required the signer to fill in a blank with his/her name and sign at the bottom.  These letters are unsworn and provide no information upon which the Court could determine the signatories' relationship to Defendant, basis of knowledge, or underlying facts supporting their endorsement of the letters' content.

Oct. 26, 2009, Dkt. Entry No. 314; Jury Verdict, Dkt. Entry No. 315.  On March 24, 2010, the Court vacated the jury's verdict as to the conspiracy to obstruct justice count and otherwise denied Defendant's motion to set aside the jury verdict and for a new trial.  *See generally, United States v. Batista,* 2010 WL 1193314 (EDNY March 24, 2010).

In sum, Defendant, while a New York City Police Department ("NYPD") Detective, provided confidential law enforcement information, including warnings of police activity, to codefendant Virgilio Hiciano, who engaged in a major drug trafficking operation and related acts of violence in Brooklyn, New York, between January 1998 and July 2007. *Id.* at *1.  Defendant also witnessed Hiciano and a confidential informant give cocaine to a woman on numerous occasions, and Defendant distributed a small quantity of ecstasy to a woman in Hiciano's presence. *Id.*  Defendant also knowingly and intentionally obstructed, influenced, or impeded an Eastern District of New York grand jury investigation and tried to obstruct justice by enlisting the aid of a childhood friend assigned to the NYPD's Internal Affairs Division.  *Id.*  Defendant committed bank fraud by providing a fraudulent termite inspection and treatment certification form to a municipal credit union as part of a mortgage loan application submitted on behalf of Defendant's brother. *Id.* at FN 2.

Defendant was sentenced on June 10, 2010, to 180 months of imprisonment on each count of conviction to run concurrently with one another followed by five years of supervised release on Count One, conspiracy to distribute and possess with intent to distribute cocaine base, cocaine, and ecstasy, and three years of supervised release as to each of the remaining counts, all supervised release terms to run concurrently with one another.  *See generally, United States v. Batista,* 732 F.2d 82 (EDNY 2010)(Addressing sentencing issues, including minimal/minor role reduction and obstruction of justice enhancement).  Defendant's judgment of conviction and sentence were

affirmed by the Second Circuit Court of Appeals on June 29, 2012.  *See generally, United States v. Batista,* 684 F.3d 333 (2d Cir. 2012).  Probation reports that Defendant's projected release date for home detention is September 20, 2022 and that his projected ultimate release date is March 20, 2023.  *See*, SR at 3.

## LEGAL STANDARD

A district court retains "broad" discretion in deciding motions for compassionate release. *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020).  "[A]fter the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request . . . whichever is earlier," and if the Court finds "extraordinary and compelling reasons warrant such a reduction," then a court "may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable."  18 U.S.C. § 3582(c)(1)(A)(i).  "Such a reduction [must be] consistent with applicable policy statements issued by the Sentencing Commission."  *Id.*  The applicable Sentencing Guideline, § 1B1.13, is applicable only to those motions that the Bureau of Prisons ("BOP") has made, and "is not applicable to compassionate release motions brought by defendants."  *See*, *Brooker*, 976 F.3d at 235-36.  "A district court may, in exercising its broad discretion, rely on the CDC's guidance to determine whether certain health conditions constitute extraordinary and compelling reasons to warrant a sentence reduction." *United States v. Jaramillo*, 858 Fed. Appx. 418, 419 (2d Cir. 2021).  In seeking a sentence reduction, the defendant "has the burden of showing that the circumstances warrant that decrease." *United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992).

The Court is mindful that, "[a] document filed *pro se* is to be liberally construed and a *pro se* [pleading], however inartfully pleaded, must be held to less stringent standards than formal

pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted). Accordingly, the Court interprets the motion "to raise the strongest arguments that [it] suggest[s]." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis omitted).

## DISCUSSION

As a threshold matter, the Court must consider whether Defendant exhausted his administrative rights within the BOP. Currently, Defendant is housed at Federal Correctional Institution Oakdale I ("FCI Oakdale I"). However, when he submitted his motion for a reduced sentence, he was housed at FCI Schuylkill. On April 2, 2020 or April 3, 2020, Defendant submitted a request for early release to home confinement to the warden of FCI Schuylkill. *See*, SR at 1; Early Release Requests, Ex. A and B to Def. Mot. The warden of FCI Schuylkill denied Defendant's request on April 14, 2020. *See*, SR at 1; Denial Letter, Ex. C to Def. Mot. On April 23, 2020, Defendant appealed the denial of his request to BOP, and no decision has been reported on the appeal to date. *See*, SR at 1; Appeal of Denial, Ex. D to Def. Mot. The BOP has not made any related request on Defendant's behalf since then, and more than thirty days have elapsed since Defendant's request. Therefore, Defendant has exhausted his administrative rights.

Next, the Court considers whether Defendant has presented sufficiently an "extraordinary and compelling reason" justifying a reduction in sentence. 18 U.S.C. § 3582(c)(1)(A). Defendant argues that he is at an increased risk of suffering a severe illness due to COVID-19 because of: (1) his age; (2) his hip condition from an injury sustained while incarcerated, and related anti-inflammatory and corticosteroid prescriptions; and (3) his inability to practice social distancing while incarcerated.

As to age, the Center for Disease Control ("CDC") advises that "[o]lder adults are more

likely to get very sick from COVID-19," and that "[t]he risk increases for people in their 50s and increases in 60s, 70s, and 80s." *See*, *COVID-19 Risks and Vaccine Information for Older Adults*, CDC, https://www.cdc.gov/aging/covid19/covid19-older-adults.html (last visited March 29, 2022). Defendant is forty-eight years old and, therefore, below the age range where risk increases according to the CDC. Defendant contends that he should be treated as someone in his fifties because he is almost fifty but provides no credible evidence in support. Without such, his argument is speculative. Notably, Defendant is projected to be released to home confinement before he turns fifty.

As to his hip condition, Defendant does not provide any documentary evidence, including medical records, to support his claim of inflammation caused by a chronic hip condition. Defendant cites to a lawsuit he brought relating to his hip injury, but a review of that docket shows that most of his claims were dismissed, and, according to Defendant, the remaining claims were settled. *See*, *Batista v. United States*, 16-cv-794 (D.Minn.); Def. Supp. Decl. at ¶ 15. However, Probation confirms that a review of records indicates Defendant has received outpatient treatment for his hip, specifically, corticosteroid injections. *See*, SR at 2. Assuming that Defendant's representations of the severity of his hip injury are accurate, it still would not create an extraordinary and compelling circumstance warranting his release. The CDC does not list chronic hip condition or Defendant's related anti-inflammatory medication as factors that will increase the risk of serious illness due to COVID-19. Moreover, Defendant has not provided any documentation or evidence demonstrating how his hip condition presents an immediate or sufficiently severe condition that requires an early release.

As to corticosteroid injections, the CDC advises that "long-term uses" of corticosteroids "can lead to secondary or acquired immunodeficiency," and that "[b]eing immunocompromised

can make you more likely to get very sick from COVID-19." *People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Feb. 25, 2022). Again, Defendant has not provided any documentation to support his claimed use of corticosteroids. Defendant contends that, for an unspecified period of time, he received a corticosteroid shot for his hip once every six months. Probation reports that, as of July 8, 2020, Defendant last visited a hospital for a corticosteroid shot on November 27, 2019, which is longer than a six-month interval. *See*, SR at 2. Notably, as of at least June 6, 2020, Defendant advises he will not receive additional injections for the duration of the pandemic. *See*, Def. Supp. Decl. at ¶ 17. Based on this, the Court cannot conclude that Defendant's usage is "long-term." Even if his usage were "long-term," Defendant has provided "little information about his use of [the corticosteroid,] including what effects it had on him, if any," such as whether it resulted in a weakening of his immune system. *United States v. Saleh*, 2020 WL 3839626, at *3 n.4 (S.D.N.Y. July 8, 2020) (denying motion for compassionate release); *See also*, *United States v. Davidson*, 2022 WL 484829, at *3 (S.D.N.Y. Feb. 17, 2022) (no extraordinary and compelling circumstances where defendant's medical records showed daily dose of prednisone but that he tolerated the medication without problems).

As to his conditions of confinement, Defendant has not presented any specific circumstances of his conditions at FCI Oakdale I that merit a finding of extraordinary and compelling circumstances. As of March 29, 2022, the BOP reports that FCI Oakdale I has zero active COVID-19 cases with seven prior COVID-19 related fatalities. *See*, *COVID-19 Coronavirus*, BOP, https://www.bop.gov/coronavirus/. This low infection rate cuts against Defendant's claim that imprisonment hinders his ability to socially distance adequately. *See*, *United States v. Betton*, 2022 WL 815067, at *1 (S.D. MS Mar. 16, 2022) (denying compassionate

release for defendant at FCI Oakdale I); *United States v. Worley*, 2022 WL 717078, at *3 (M.D. LA Mar. 9, 2022) (same).  Accordingly, this is not an extraordinary or compelling reason for compassionate release.

Defendant cites to several cases finding that the COVID-19 pandemic is an extraordinary and compelling reason for compassionate release.  However, most of these cases were decided at the outset of the pandemic, before vaccines had been approved and made widely available to the general public and inmates.  While Defendant has not indicated whether he is vaccinated, he does not claim to have a medical condition that prevents him from getting vaccinated.  The Court also notes that vaccines are available to inmates and the BOP either has offered or is in the process of offering booster shots to inmates.  *See*, *COVID-19 Coronavirus*, BOP, https://www.bop.gov/coronavirus/ .

Defendant has failed to demonstrate the severity of his claimed medical conditions. Defendant also argues that his good behavior while incarcerated, the minimum security level of his facility, his low risk to the community, existence of a re-entry plan, and that he was designated previously by FCI Schuylkill as eligible for early release to home confinement support his motion for early release.[2]  However, none of these considerations demonstrate an immediate need for release or some other extraordinary or compelling reason for release.  The Court has considered Defendant's other arguments and finds them unpersuasive. Therefore, Defendant has not demonstrated an extraordinary and compelling reason for a reduction of his sentence.

As Defendant has not demonstrated extraordinary and compelling reasons to reduce his

---

[2] Defendant claims that after he was identified for early release to home confinement, his request for early release was denied by the warden of FCI Schuylkill purportedly because COVID-19 infection rates were lower at FCI Schuylkill than in the area surrounding his intended home confinement residence.  However, Defendant does not support this claim with any evidence, and the submitted denial letter from FCI Schuylkill does not cite a disparity in infection rates as a reason for denial.  *See*, Denial Letter.

sentence, the Court need not address the § 3553(a) factors.  *See*, *United States v. Jones*, 17 F.4th 371, 375 (2d Cir. 2021) (while analysis of § 3553(a) factors is helpful on appeal, "§ 3582(c)(1)(A) permits a district court to end its analysis if it determines that extraordinary and compelling reasons for granting the motion are absent").  "[E]xtraordinary and compelling reasons are necessary—but not sufficient—for a defendant to obtain relief under § 3582(c)(1)(A)." *Id.* at 374.  "It follows that if a district court determines that one of those [§ 3582(c)(1)(A)] conditions is lacking, it need not address the remaining ones." *United States v. Keitt*, 21 F.4th 67, 73 (2d Cir. 2021).

Moreover, given the nature and severity of Defendant's crime, the § 3553(a) factors would not be served by a reduction in sentence.  It is commendable that Defendant has not had serious disciplinary incidents while incarcerated and has participated in a number of self-improvement programs.  Defendants' family's letters demonstrate that they intend to support him in transitioning back into society upon his eventual release.  However, Defendant is incarcerated because, among other things, he abused his position as an NYPD detective in, *inter alia,* providing assistance to a large and violent drug trafficking organization and to commit bank fraud.  Moreover, he attempted to obstruct the investigation of Hiciano's drug trafficking activities, his own illegal activities, and the prosecution of this case.  Defendant also perjured himself when testifying at his trial.  A reduction of his sentence would undermine respect for the law and the deterrent purpose of his original sentence.  *See*, Sentencing Tr., Dkt. Entry No. 531.  Therefore, under the circumstances of this particular case, notwithstanding the COVID-19 pandemic, and given the seriousness of the offenses, the interests of punishment and deterrence would counsel against a reduction in sentence.

## **CONCLUSION**

For the foregoing reasons, Defendant's motion for a reduction of sentence and compassionate release is denied in its entirety.


SO ORDERED.

DATED:  Brooklyn, NY
March 30, 2022

_____
/s/
DORA L. IRIZARRY
United States District Judge
